UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAGHUPATHI RAO, )
)
Plaintiff, )
)
vs. ) 06 C 5451
)
COVANSYS CORPORATION, )
a/k/a COMPLETE BUSINESS )
SOLUTIONS, INC., a Michigan )
corporation, )
)
Defendant. )

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Covansys Corporation ("Covansys") for summary judgment in its favor on the complaint of Plaintiff Raghupathi Rao. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following factual recitation is derived from the parties' statements of material fact filed pursuant to Local Rule 56.1. Rao, an Indian citizen, is a former employee of Covansys, a Michigan corporation with its principal place of business in Farmington Hills, Michigan. Covansys provides technology services to its clients; employees are often assigned to work on clients' premises for extended periods of time.

Rao began working for Covansys on February 1, 1999, as a computer specialist. He was admitted to the United States under an H-1B visa, which allows alien workers to enter and work in this country on a temporary basis in certain specialty occupations.[1]

Rao was initially assigned to work on-site for W.W. Grainger, one of Covansys's clients, in Niles, Illinois. This assignment continued until April 2000. For a month thereafter, he was not assigned to an external client. During that time, he underwent training and worked on internal projects; his salary remained the same. Holders of nonimmigrant visas, such as the H-1B, who are no longer working on a project in their designated field are required to return to their native country. To avoid having to return to India, Rao requested to be placed on another Covansys project.

In May 2000, he was assigned to another project that was intended to provide Grainger with technology support and ensure that its computer programs ran uninterrupted 24 hours a day, seven days a week. He continued with this project until December 2001. During this project, Rao's day-to-day activities included starting and stopping fax machines and printers; monitoring and cancelling user jobs; loading and unloading tapes from racks and carts; pushing the carts to the facility's loading area;

---

[1] To be employed in a "specialty occupation" as that term is used in § 1101(a)(15)(H)(i)(b1), a nonimmigrant employee must be engaged in an occupation that would require a bachelor's degree or higher in the particular specialty and apply a body of specialized knowledge both on a theoretic and practical level. 8 U.S.C. § 1184(i)(3).

loading paper into printers; printing labels; answering phone calls; interviewing prospective employees; and various other tasks that he contends were not suitable for an employee engaged in a "specialty occupation." According to Rao, these duties jeopardized his H-1B status, potentially compromised his ability to become a permanent resident alien, and exposed him to a risk of deportation.

After December 2001, Rao went through a period when he was not assigned to a particular project, followed by a two-month project, followed by another period without a specific assignment that lasted until May 2002. In that month, Rao agreed to be assigned to Mattel, Inc., a Covansys client located in southern California. Before he moved, Rao spoke with Renga Varadh, a Covansys resource manager,[2] about having his salary increased to offset the higher cost of living in California. According to Rao, in response to his inquiries, Varadh stated, "Don't worry about all these things...[w]e will take care of it later. You now concentrate on reporting to the Mattel office as soon as possible." When Rao pressed the issue further, Varadh responded, "I told you not to worry. All these things will be considered after you move here."

Rao moved to California in June 2002. His salary was not adjusted; he states that his cost of living was $1000 per month higher than it had been in Illinois. He

---

[2] Neither party explains what duties correspond to the title of "resource manager." For the sake of discussion, we will assume that Varadh had knowledge of Covansys's policies with regard to salary increases and the like.

continued to work in Los Angeles for Covansys for another 43 months. In December 2005, after obtaining permanent residency, Rao quit his job with Covansys.

On August 30, 2006, Rao filed suit in the Circuit Court of Cook County, seeking damages for breach of fiduciary duty, breach of contract, and promissory estoppel. Thereafter, Covansys removed the case to this court, relying upon diversity jurisdiction. The parties have completed discovery, and Covansys now moves for summary judgment in its favor on all three counts of the complaint.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light

most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With these principles in mind, we turn to the instant motion.

## DISCUSSION

As stated earlier, Rao was admitted to the United States as an H-1B visa holder in a "specialty occupation." Several federal entities are involved in the process of granting H-1B status: the Department of State, the Department of Justice, the Department of Labor, and the Department of Homeland Security. An employer who wishes to employ a nonimmigrant employee in a specialty occupation must file petitions, labor certification applications pursuant to 8 U.S.C. § 1182(n), and other supporting documentation describing the duties of the prospective employee. 8 U.S.C. § 1101(a)(15)(H)(1)(b1).

The penalties are stiff for those who fail to comply with the statutory provisions for nonimmigrant workers. An alien who does not maintain proper nonimmigrant status or whose nonimmigrant visa is revoked is deportable. 8 U.S.C. §§ 1227(a)(1)(B), (a)(1)(C)(i). Employers who do not comply face a variety of

sanctions from inability to petition on behalf of employees for a specified period of time, *see*, *e.g.*, 8 U.S.C. §§ 1182(n)(2)(C)(i)-(iii); civil penalties, 8 U.S.C. § 1324a(e)(4); and fines, 8 U.S.C. § 1324a(f)(1).

There is no indication that Rao or Covansys were ever penalized for the alleged violations of the immigration laws; Rao's complaint sounds only in state law civil causes of action. We consider each claim in turn.[3]

## A. Count I: Breach of Fiduciary Duty

The first count of Rao's complaint seeks $30,000 in damages for a breach of fiduciary duty. In Illinois, a plaintiff claiming a breach of fiduciary duty must first establish that the defendant owed such a duty. *Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005). The duty can arise as a matter of law from

---

[3]Covansys claims that Counts I and II must be dismissed because, though they are stated in terms of state-law causes of action, they in fact seek a remedy under the Immigration and Naturalization Act ("INA"). Covansys argues that the INA does not provide a private right of action to employees who allege immigration violations on the part of their employers and thus we have no subject matter jurisdiction to consider the breach of contract claim. However, the case upon which they rely for this proposition conflicts with Supreme Court authority stating that a district court is not without jurisdiction to consider a case where the existence of a private right of action is implicated. *See*, *e.g.*, *Air Courier Conference of America v. American Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3, 111 S. Ct. 913, 917 n.3 (1991). Thus, even if Counts I and II are perceived to be brought under the INA, we are not without subject matter jurisdiction to consider them.

particular relationships, such as that between a principal and an agent, or be generated by special factual circumstances. *Id.*

Rao argues that Covansys owed him a duty as a matter of law because, with regard to his immigration matters, a relationship existed between Covansys and him wherein he was the principal and Covansys the agent. However, the undisputed facts show that this cannot be true. One of the primary attributes of an agency relationship is the principal's right to control the agent's actions in carrying out the principal's business. *See Eychaner v. Gross*, 779 N.E.2d 1115, 1134, 1140 (Ill. 2002). There is no indication from the record that Rao had any right to control Covansys either in the context of preparing the filings it submitted in support of the H-1B petitions or in determining what job duties he performed. The record supports a conclusion that the only agency relationship between the two parties was the one wherein Covansys was the principal and Rao the agent subject to its control. As a result, Covansys did not owe Rao a fiduciary duty in connection with the preparation of the paperwork or conducting itself in a manner consistent with the representations contained in the petition.

Because there was no duty to be breached, Covansys is entitled to judgment as a matter of law in its favor on Count I of the complaint.

## B. Count II: Breach of Contract

In Count II of his complaint, Rao avers that the petitions and attendant filings that Covansys filed to maintain his H1-B status constitute a contract between Covansys and the federal government of which he was a third-party beneficiary. Like Count I, this count alleges that Rao suffered $30,000 in damages from the alleged breach. According to Rao, Covansys failed to ensure his duties of employment were consistent with those described in the filings to the government and in so doing breached the contract to his detriment. He insists that his purported status as a third-party beneficiary allows him to recover for breach of a contractual arrangement of which he was not a part. In the abstract, such a claim is recognizable in Illinois. *See XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995); *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257 (Ill. 1931).

Covansys contends that it is entitled to judgment as a matter of law on Count II for two reasons: 1) representations Rao made in his own immigration filings that the statements Covansys made to the government were true and accurate and 2) the damages he contends resulted from the breach are not properly addressed in a contract action. However, it is apparent from the facts recited above that Rao's claim suffers from a more fundamental flaw. A breach of contract claim must begin with an enforceable contract. *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. Ct.

1999). To establish that a contract exists, a party must show an offer, an acceptance of that offer, and consideration to support both. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). Apparently, Rao perceives the situation as follows: Covansys offered to provide Rao with a job involving the duties stated in the application and the government accepted his offer. As consideration for its offer, Covansys promised to continue to employ Rao in the capacities listed; for its part, the government provided the necessary certifications and authorizations as well as Rao's H1-B visa as consideration for its acceptance. Rao, as the visaholder, was the third-party beneficiary of all of this activity.

Aside from the problematic nature of treating applications for discretionary grants of immigration status or approvals thereof as contracts, it is apparent that Covansys's actions cannot qualify as legally cognizable consideration underlying its "offer" such that a contract could be formed between it and the government. A party's agreement to do or refrain from doing something that it is already legally obligated to do or refrain from doing is not consideration. *See, e.g., Johnson v. Maki and Associates, Inc.*, 682 N.E.2d 1196, 1199 (Ill. App. Ct. 1997). Like all legal entities, employers must comply with the law at all times. Any promise to the government that one will not behave in an illegal manner triggers no detriment to the promising party. Thus, it is not sufficient to constitute contractual consideration. *See id.* Covansys

could not file a visa petition saying anything but that it would comply with statutes controlling the employment of a nonimmigrant employee such as Rao. In short, the visa proceedings did not give rise to any contract for Rao's benefit that could later be breached if his employer did not employ him as stated in the application. Consequently, Covansys is entitled to summary judgment in its favor on Count II.

## C. Count III: Promissory Estoppel

The final count of Rao's complaint revolves around the conversation he had with Varadh regarding Covansys footing the bill for the higher cost of living Rao experienced when he moved to Los Angeles. A claim of promissory estoppel is comprised of five elements. First, a defendant must make an unambiguous promise to the plaintiff. *Quake Const., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990). Second, the plaintiff must rely on the promise. *Id.* Third, the reliance must be expected and foreseeable by the defendants. *Id.* Fourth, the plaintiff's reliance must result in a detriment to the plaintiff. *Id.* Last, the reliance plaintiff places on the promise must be both justifiable and reasonable. *Id.*

The claim Rao puts forth in Count III is unsupportable from the first. Rao points to Varadh's comments that he should not "worry about all these things" because "[w]e will take care of it later" and "[a]ll these things will be considered after you move [to California]." In Rao's view, these statements constituted an unambiguous promise that

Rao's salary would be augmented so as to keep his living costs static despite living in a more expensive area of the country. Varadh's statements cannot be considered to be an unambiguous promise that Rao would receive a higher salary when he moved to California. At best, they were an unambiguous promise that the company would consider whether to raise his salary. In any event, the words Rao quotes Varadh as saying evince no intention on the part of Covansys to assume a mandatory obligation that could support a viable claim of promissory estoppel. *DiLorenzo v. Valve and Primer Corp.*, 807 N.E.2d 673, 680-81 (Ill. App. Ct. 2004). Accordingly, Rao's actions in moving to California were undertaken voluntarily, not in reliance upon any unambiguous promise by Covansys. Because Count III is deficient as a matter of law, summary judgment is warranted in Covansys's favor on that count as well.

## CONCLUSION

Based on the foregoing, Covansys's motion for summary judgment [63] is granted in its entirety.

Charles P. Kocoras
United States District Judge

Dated: November 1, 2007